UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION



FILED
DEC ⁷ ⸱ ⸱ 2010
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CIV 10-3008-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | OPINION AND ORDER |
| | * | GRANTING PLAINTIFF'S |
| FRANK VANDERWALKER and KIRA | * | MOTION FOR SUMMARY |
| VANDERWALKER and ANY PARTY | * | JUDGMENT |
| IN POSSESSION, | * | |
| | * | |
| Defendants. | * | |

I.    **Introduction**

On May 6, 2010, Plaintiff filed a complaint against Defendants Frank and Kira

Vanderwalker, seeking to recover use and possession of a leasehold interest on Indian trust

land. (Doc. 1). Plaintiff subsequently filed a Motion for Summary Judgment (Doc. 7) under

Rule 56 of the Federal Rules of Civil Procedure. Defendant Kira Vanderwalker filed a

Memorandum in Opposition (Doc. 13) to Plaintiff's Summary Judgment Motion, and on

October 15, 2010, the Court held a hearing to consider the matter. For reasons explained

below, the Court grants Plaintiff's Motion for Summary Judgment.

II.    **Facts**

In April of 1998, Defendant Frank Vanderwalker[1] and his former wife Wanita entered

into a residential lease agreement with the Rosebud Sioux Tribe for a parcel of trust land

described as:

---

[1] On September 9, 2010, the Clerk of Court entered a finding of Default against Frank
Vanderwalker. (Doc. 19). Thus, this Opinion and Order concerns only Kira Vanderwalker.

SE1/4SE1/4SE1/4 of Section 3, Township 41 North, Range 29
West, 6th PM, containing 2.50 acres, M/L, and (subject to prior
valid existing right of way).

(Doc. 13-1). The residential lease agreement gave the Rosebud Sioux Tribe the right

of first refusal in the event that Frank or Wanita defaulted on any mortgage for which the

lease was pledged as security. (Doc. 13-1).

In October of 2000, Frank and Wanita entered into a leasehold mortgage agreement,

putting their interest in the parcel of trust land up as security for a loan they received from

Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). (Doc. 13-3). Unfortunately, Frank and

Wanita defaulted on the loan, and in April of 2002, Wells Fargo notified the Rosebud Sioux

Tribe that the loan was in default and that the Tribe had the right of first refusal to acquire

Frank's interest in the property. (Doc. 13-6). As of March 2001, however, the original lease

agreement had been modified, and the ownership of the parcel of trust land had been

transferred from the Rosebud Sioux Tribe to the Tribal Land Enterprise. (Doc. 13-5). Tribal

Land Enterprise is an entity that was formed on April 16, 1943 by the Rosebud Sioux Tribe

as a corporation under the Indian Reorganization Act. (Doc. 26). The Bureau of Indian

Affairs approved and recorded this transfer. (Doc. 13-5).

Following Frank and Wanita's default, Wells Fargo transferred its interest in the

mortgage to the Secretary of Housing and Urban Development ("HUD"). In April of 2004,

the Government, on behalf of HUD, brought a federal foreclosure action against Frank,

Wanita, and the Rosebud Sioux Tribe. (Doc. 13-7, 13-8). The 2004 Complaint did not name

Tribal Land Enterprise as a party. In July of 2004, the Rosebud Sioux Tribe responded to the

Government's complaint, stating that the Tribe would exercise its right of first refusal by

paying the balance of the loan or assuming the mortgage. (Doc. 13-9). The Rosebud Sioux

Tribe failed to pay the balance or assume the mortgage, however, and in November of 2005,

the Honorable Charles B. Kornmann entered a Judgment of Foreclosure and Decree of Sale

against Frank, Wanita, and the Rosebud Sioux Tribe. (Doc. 13-13). The Judgment of

Foreclosure ordered Frank and Wanita Vanderwalker to vacate the premises upon expiration

of their 180-day right of redemption. (Doc. 13-13). Frank and Wanita never appealed the

foreclosure judgment or redeemed the property interest within the 180-day period set forth in

their mortgage and the foreclosure judgment. As a result of the Decree of Sale, the property

was sold at a public auction in February of 2006. Civ. 04-3009 (Doc. 25). The Government

was the only bidder at the public auction, and received a marshal's deed conveying Frank and

Wanita's interest in the leasehold to the Government. Civ. 04-3009 (Doc. 25). The interest

of the Government as sole owner of the lease and residence and appurtenances on the trust

property was duly recorded with the Bureau of Indian Affairs as Doc. No. 73918, thus

extinguishing any interest Frank or Wanita Vanderwalker had in the property. (Doc. 1-1).

Frank and Wanita Vanderwalker later divorced. Although Frank no longer had any

interest in the trust property and the Judgment of Foreclosure required him to vacate the

premises, he continued to reside there. Following his divorce from Wanita, Frank married

Kira Vanderwalker and moved her and her children onto the trust property. In January of

2008, Frank Vanderwalker executed a document that removed Wanita Vanderwalker's name

from the lease and replaced it with the name of his new wife, Kira. (Doc. 13-15). The

document made no other changes to the original terms of the lease, and although it also

concerns Kira Vanderwalker, only Frank Vanderwalker's signature appears on the document.

(Id.). At the time Frank Vanderwalker executed the document, he no longer had any interest

in the leasehold and his 180-day right of redemption had expired.

The Government has notified Frank and Kira Vanderwalker that they do not have permission to occupy the leasehold property, and has demanded that the Vanderwalkers vacate the property. (Doc. 1-2). The Government brought this second action to recover use and possession of the property against Frank, Kira, and anyone else in possession of the property. (Doc. 1). Frank did not answer the Complaint and default judgment entered against him. (Doc. 19). Kira answered and resisted the Government's Motion for Summary Judgment, asserting that the Government failed to properly foreclose on the leasehold interest by failing to name Tribal Land Enterprises in the 2004 lawsuit. (Doc. 13, 14).

## III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor." Adam v. Stonebridge Life Ins. Co.,612 F.3d 967, 971 (8th Cir. July 15, 2010) (quoting Roeben v. BG Exelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008)). In a determination of whether summary judgment is warranted, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. July 9, 2010 (quoting Cordry v. Vanderbilt Mortgage & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). "If opposing parties tell two different stories, the court must review the record,

4

determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party, as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." Id. (internal quotations omitted).

**IV.    Discussion**

Standing is a "threshold inquiry" that must be resolved before reaching the merits of a claim. Medalie v. Bayer Corp., 510 F.3d 828, 829 (8th Cir. 2007) (citing City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007)). Generally, a party "may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008) (citing Warth v. Seldin, 422 U.S. 490, 498-99 (1975)). It is "only in exceptional circumstances [that] a party [may] have standing to assert the rights of another." Oerhleins v. Hennepin Cnty., 115 F.3d 1372, 1378-79 (8th Cir. 1997) (citing Warth, 422 U.S. at 499).

Here, Kira Vanderwalker was not a party to the residential lease agreement entered into by Frank and Wanita Vanderwalker. Nor was she a party to either the leasehold mortgage agreement or the subsequent foreclosure action. Additionally, Frank's 2008 substitution of Kira for Wanita on the lease agreement failed to vest Kira with any rights to the property, because by that time both Frank and Wanita's interests already had been extinguished. In spite of this, Kira now attempts to attack the validity of the foreclosure judgment by claiming that the Government failed to notify the Tribal Land Enterprise of its right to purchase the Vanderwalkers' interest in the property. Any failure to provide notice, however, affected only the rights of Tribal Land Enterprise, and not those of Kira Vanderwalker. Kira did not receive her claimed right in the leasehold property from Tribal

Land Enterprise, but rather from Frank after the time all of his rights in the leasehold property were extinguished by an order of this Court.

Furthermore, Kira has failed to demonstrate any "exceptional circumstances" present in this case that would warrant allowing her to assert the rights of Tribal Land Enterprise. See generally Johnson v. Missouri, 142 F.3d 1087, 1090 (8th Cir. 1998) ("Before a litigant will be allowed to assert a claim on behalf of a third party, the litigant must show, among other things, that the third party is unable to protect its own interests.") (citation omitted). Kira is not a representative of Tribal Land Enterprise and does not base her claim of any right to the leasehold premises on any relationship with Tribal Land Enterprise. Tribal Land Enterprise at no time has sought to intervene in this case. There is no indication that Tribal Land Enterprise is unable to protect its own interests. Accordingly, the Court finds that Kira Vanderwalker lacks standing to challenge the foreclosure judgment.

Kira also argues that the Government failed to exhaust tribal remedies by not bringing this case in tribal court. "The tribal exhaustion doctrine is based on a 'policy of supporting tribal self-government and self-determination,' and it is prudential, rather than jurisdictional." Gaming World International, Ltd. v. White Earth Band of Chippewa, 317 F.3d 840, 849 (8th Cir. 2003) (citations omitted). "Exhaustion is mandatory, however, when a case fits within the policy" of supporting tribal self-government and self-determination. Id. (citing Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir. 1994); Burlington R.R. Co. v. Crow Creek Tribal Council, 940 F.2d 1239, 1245 (9th Cir. 1991)). Here, this Court has jurisdiction over the case based on 28 U.S.C. § 1345 because the United States is a party. 28 U.S.C. § 1345 ("Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United

States . . ."). Further, this is not an instance where either tribal self-government or self-determination is implicated. Instead, this is a dispute between the Government and individuals who have refused to vacate a leasehold interest, notwithstanding the foreclosure of that interest by the Government. In this case, the Rosebud Sioux Tribe is not a named party, did not exercise its rights in the prior litigation to preserve an interest in the leasehold, and thus has no direct interest. The Government was not required to exhaust tribal remedies before bringing this action in federal court. See United States v. American Horse, 352 F.Supp. 2d 984, 990 (D.N.D. 2005) (action by United States to foreclose tribal member's leasehold interest did "not involve tribal-related activities so as to require tribal exhaustion prior to filing" in federal court).

## V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 7) is granted. It is further

ORDERED that

1. The Defendants and all other occupants are ordered to peacefully deliver possession of the leasehold property to the United States, including the delivery, to HUD or its designee, of all keys to the residence and to any appurtenances, on or before January 7, 2011;

2. A permanent injunction enters prohibiting the Defendants at any time after January 7, 2011, from re-entering, using, occupying or possessing the leasehold property without the express and written permission of HUD, its designee, assignee or successor in interest and prohibiting the Defendants from interfering with the sale or lease of the property by HUD;

3. The United States Marshal is authorized and directed from and after January 7, 2011, to enforce the delivery of possession to the United States, if necessary, by the forcible removal and detention of the Defendants or others who may attempt to interfere with the delivery of possession;

4. The United States is authorized and directed to remove the Defendants' personal property from the premises should the Defendants fail to do so on or before January 7, 2011, and the United States Marshal shall oversee the removal of Defendants' personal property and secure the leasehold property from further occupancy by the Defendants or other unauthorized persons;

5. The Defendants are required to reimburse the United States Marshal and the Plaintiff for the expenses and costs incurred as a result of this action and for such other costs and expenses as permitted by law. Those costs and expenses should include, but not be limited to, the costs of personal service; of on-site supervision of the removal of the Defendants; of hiring workers to remove personal property from the residence, if necessary; and of hiring a locksmith to change the locks and otherwise secure the premises from re-entry by the Defendants or others to whom they may have given keys;

6. The United States shall not be liable for the loss of, or damage to, any personal property that it is forced to remove from the residence or appurtenances due to Defendants' failure to do so; and that the United States has no duty to the Defendants to store or secure any personal property the Defendants fail to remove;

7. Plaintiff shall be entitled to judgment for damages for any waste to the property occasioned by the Defendants' unauthorized use, possession and refusal to peacefully vacate.

Dated this _10th_ of December, 2010.

BY THE COURT:



_____

ROBERTO A. LANGE

UNITED STATES DISTRICT JUDGE